**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FENCE CREEK CATTLE COMPANY, an
Oregon partnership; GAZELLE LAND
AND TIMBER, LLC, an Oregon
limited liability company; KING
WILLIAMS; MICHAEL G. SMITH,
    *Plaintiffs-Appellants,*

v.

UNITED STATES FOREST SERVICE, an
agency of the United States; MARY
DEAGUERO, in her official capacity
as District Ranger, Eagle Cap-
HCNRA District, Wallowa-
Whitman National Forest;
BARBARA WALKER, in her official
capacity as District Ranger,
Wallowa Valley District,
Wallowa-Whitman National
Forest,
    *Defendants-Appellees.*

No. 08-36051

D.C. No.
2:06-cv-01236-SU

OPINION

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, Senior District Judge, Presiding

Argued and Submitted
March 1, 2010—Portland, Oregon

Filed April 26, 2010

Before: Richard A. Paez, Richard C. Tallman, and
Milan D. Smith, Jr., Circuit Judges.

6117

<u>6118</u>         Fence Creek Cattle Co. v. USFS
           Opinion by Judge Tallman

Case 2:06-cv-01236-SU   Document 74   Filed 04/26/10   Page 3 of 19
Case: 08-36051   04/26/2010   Page: 3 of 19   ID: 7313777   DktEntry: 29-1

6120        FENCE CREEK CATTLE CO. v. USFS

## COUNSEL

Paul A. Turcke, Moore Smith Buxton & Turcke, Chartered, Boise, Idaho, for the plaintiffs-appellants.

Kurt G. Kastorf (argued) and David Shilton, U.S. Department of Justice Environment & Natural Resources Division, and John C. Cruden, Assistant Attorney General, for the defendants-appellees.

## OPINION

TALLMAN, Circuit Judge:

The issue in this case boils down to a simple question: Where's the beef? Plaintiff-Appellant Fence Creek Cattle Company ("Fence Creek") claimed that it had purchased over 1,500 head of cattle from the former owner, which it wished to continue grazing on federal land. But, when questioned by the United States Forest Service ("Forest Service"), Fence Creek could not sufficiently prove that it owned the cattle. Consequently, the Forest Service cancelled portions of Fence Creek's livestock grazing permit.

The Forest Service issued a term grazing permit to Fence Creek on February 6, 2004. The permit allowed cattle grazing on four allotments in Oregon's Wallowa-Whitman National Forest: Chesnimnus, Log Creek, Dodson-Haas, and Middlepoint. However, the Forest Service cancelled Fence Creek's use of the Chesnimnus and Log Creek allotments on December 9, 2005, for failure to comply with the terms and conditions of the permit. Fence Creek invoked the Forest Service's internal procedures for administrative review, appealing to both the Deputy Forest Supervisor and the Deputy Regional Forester. Each reviewer upheld the decision.

Still unsatisfied with the cancellation of the two allotments, Fence Creek filed a complaint in the United States District Court for the District of Oregon alleging under the Administrative Procedure Act ("APA") that the Forest Service's decision was arbitrary and capricious and that the Forest Service violated both constitutional and statutory due process requirements. The district court granted the Forest Service's summary judgment motion, and we affirm.

6122          FENCE CREEK CATTLE CO. v. USFS

## I

The facts pertaining to the grazing permit at issue arise from a real estate transaction in Wallowa County, Oregon. In September 2003, Gazelle Land & Timber ("Gazelle") purchased over 27,000 acres of land, called the Lucky Diamond Ranch, 1,459 cows, and 92 bulls from Garnet Lewis. The real estate sales agreement required Lewis to deliver grazing permit waivers to Gazelle, or its nominee, for specific federal grazing allotments, including the ones at issue in this appeal.[1] The real estate sales agreement also provided that certain parcels of land be deeded to Fence Creek.[2]

On February 4, 2004, Fence Creek submitted an application for a grazing permit for the Chesnimnus, Log Creek, Dodson-Haas, and Middlepoint allotments.[3] The application was supported by waivers signed by the previous permittees operating

---

[1]A grazing permit authorizes the holder to graze livestock on specific allotments of the National Forest Service lands. *See* 36 C.F.R. § 222.1(b)(5). An allotment is a designated portion of government land available for livestock grazing under terms and conditions specified in this special use permit. *See id.* § 222.1(b)(1). A permit holder has first priority to receive a new permit at the end of the term period. *Id.* § 222.3(c)(1)(ii). If the permittee sells the livestock allowed to graze on an allotment, a new term permit is issued to the purchaser only if the original permittee waives his term grazing permit in favor of the purchaser. *Id.* § 222.3(c)(1)(iv). Thus, a waiver is essentially a transfer of the original permit holder's grazing rights to the purchaser and is necessary for the purchaser to obtain a new grazing permit.

[2]The real estate sales agreement identified Gazelle as the "Buyer" and Garnet Lewis and his family as the "Seller." Numerous addenda to the agreement involved parties not listed in the original agreement, including Fence Creek. It is unclear from the record why the additional parties benefitted from the real estate transaction; we can only assume it was in conjunction with the joint venture formed after the transaction occurred.

[3]Although the Forest Service's inquiry into Fence Creek's grazing permit included all four allotments, the Forest Service took no action against the Dodson-Haas and Middlepoint allotments. Therefore, this opinion will discuss only the Chesnimnus and Log Creek allotments.

Case 2:06-cv-01236-SU   Document 74   Filed 04/26/10   Page 6 of 19
Case: 08-36051    04/26/2010    Page: 6 of 19    ID: 7313777    DktEntry: 29-1

FENCE CREEK CATTLE CO. v. USFS            6123

on the allotments: Delbert Lewis, Garnet Lewis, Geraldine Lewis, and Barbara Kudrna. The Chesnimnus allotment was permitted for 850 head of cattle, and the Log Creek allotment was permitted for 247 head. Fence Creek also provided a bill of sale indicating that Fence Creek, a partnership of Wayne and Michele Smith and Bruce and Mary Agar, purchased 1,459 cows and 92 bulls from Garnet Lewis. Bruce and Mary Agar, as the partners of Fence Creek, signed the application for the grazing permit and the supporting waivers. On February 6, 2004, the Forest Service issued the grazing permit for the Chesnimnus and Log Creek allotments pursuant to the terms of the waivers and application: it again permitted 850 head of cattle to graze on the Chesnimnus allotment and 247 head to graze on the Log Creek allotment.

In conjunction with the purchase of the Lucky Diamond Ranch, Gazelle and Fence Creek formed a joint venture with Wayne and Michele Smith, Monty and Shelly Siddoway, Bryan and Zachary Williams, and Wyatt Agar in October 2004. The joint venture agreement provided that the members of the joint venture had purchased smaller parcels of land that were originally part of the Lucky Diamond Ranch. It also identified Fence Creek as the purchaser of nearly 1,500 head of cattle and the associated grazing permit.

In June 2005, seventeen months after the issuance of the grazing permit, the Forest Service began investigating the ownership of certain cattle that Rick Smith, a Forest Service employee, had observed on Fence Creek's allotments during the 2004 grazing season. Smith saw cattle grazing on the Chesnimnus allotment bearing a brand other than the registered Lucky Diamond brand. The terms and conditions of Fence Creek's grazing permit authorized only Fence Creek's cattle to graze on the permitted allotments.

The owner of the cattle seen on the Chesnimnus allotment, Wayne Smith, claimed that he had sold them to Fence Creek and that the cattle were in fact marked with the Lucky Dia-

mond brand, but it was smaller (and harder to see) because the brand was affixed as a hair brand rather than a cow brand.[4] There followed a series of telephone calls, meetings, and written communications. Bruce Agar told the Forest Service that Fence Creek originally planned to cull the cattle purchased from Garnet Lewis and replace the culled cattle with cattle purchased from Wayne Smith and Monty and Shelly Siddoway. Although the grazing permit did not list either Wayne Smith or the Siddoways as partners of Fence Creek, Bruce Agar claimed that the intent was to include at least Wayne Smith as a partner of Fence Creek. Unsatisfied with the explanation offered by Wayne Smith and Bruce Agar, the Forest Service decided to seek clarification of who owned the cattle to determine if further action was necessary.

The Forest Service sent a written request to Fence Creek on June 28, 2005, seeking additional documentation that Fence Creek was in compliance with the terms and conditions of the grazing permit. The letter explicitly stated that Fence Creek needed to submit proof of ownership of the livestock permitted on the allotments and listed acceptable methods of proof. It also reminded Bruce and Mary Agar that "only livestock owned by the permittee are authorized to graze under this permit." This letter did not state that Fence Creek's grazing permit would be subject to cancellation; it simply requested verification that Fence Creek met the eligibility requirements for its grazing permit.

The Agars visited the local Forest Service office to address the issues identified in the written inquiry. They produced brand inspection certificates for 600 head of cattle purchased from the Lewis family in 2003. The Agars admitted that they only purchased 600 head and that they had never received a bill of sale listing them as purchasing all 1,459 cows and 92

---

[4]A hair brand is a temporary brand because it only burns the hair and does not damage the skin. Because it simply burns the animal's hair, it only lasts until the bovine sheds its hair.

bulls. Instead, they intended to buy 600 head from the Lewis family and then add another 400 contributed by Wayne and Michele Smith and Monty and Shelly Siddoway as capital for the Fence Creek partnership. One month later, the Agars submitted information claiming that they had in fact purchased 1,459 cows and 92 bulls, but that only 600 cows and 25 bulls were brand inspected for Fence Creek. Fence Creek represented that it then "obtained an additional 200 head of cows and 10 bulls from Wayne Smith . . . and obtained another 175 head from Monty Siddoway" to make a herd of approximately 1,000 head of cattle.

While the Forest Service was investigating Fence Creek's grazing permit, the joint venture fractured and the parties entered into a settlement agreement on June 17, 2005. Under the terms of this agreement, Bruce and Mary Agar were to receive a lump-sum buyout in exchange for the transfer of all right, title, and interest in the Fence Creek partnership and brands, as well as the grazing permit issued to Fence Creek. The Agars also relinquished all right, title, and interest in Gazelle. King Williams, a partial owner of Gazelle, then notified the Forest Service that he was in control of Fence Creek. Bruce and Mary Agar requested the Forest Service contact Williams regarding its concerns over the grazing permit issued in February 2004, but the Forest Service responded that it needed to ensure that Fence Creek had in fact purchased the cattle from Garnet Lewis before it would accept a waiver of the grazing permit from the Agars to Williams.

The Forest Service sent the Agars a letter on September 6, 2005, with a copy to Williams, again attempting to acquire information that would validate the grazing permit issued to Fence Creek in February 2004. It explicitly stated that the grazing permit could be cancelled if Fence Creek failed to provide the necessary documentation and requested a response by September 30, 2005. In response, the Agars stated that they had no brand inspection certificate validating the purchase of 247 permitted cattle for the Log Creek allot-

Case 2:06-cv-01236-SU Document 74 Filed 04/26/10 Page 9 of 19
Case: 08-36051 04/26/2010 Page: 9 of 19 ID: 7313777 DktEntry: 29-1

6126     FENCE CREEK CATTLE CO. v. USFS

ment, and that they only purchased 600 cows from Garnet Lewis. The Agars told the Forest Service that Wayne and Michele Smith and Monty and Shelly Siddoway were supposed to be partners in Fence Creek, but were unable to obtain financing. The Agars admitted there was no brand inspection certificate showing that Fence Creek had purchased the cattle "contributed" by either the Smiths or the Siddoways.

King Williams responded by arguing that the grazing permit for the Log Creek allotment was waived on the basis of the purchase of the base property, and that Fence Creek culled a substantial portion of the 1,459 cows and 92 bulls purchased from Garnet Lewis. He also asserted that the Forest Service knew of the culling of the original Lewis herd and that Fence Creek did not have the necessary "paper trail" because the Forest Service staff "always assured [Fence Creek] that they had all of the necessary documents."

The Forest Service finally sent the Agars a letter on December 9, 2005, notifying them of cancellation of the permit for the Log Creek allotment "for failure to comply with the conditions for waiver of a term grazing permit." The Forest Service also reduced the permit for the Chesnimnus allotment by 250 head of cow/calf pairs "for failure to comply with the conditions for waiver of a term grazing permit." Finally, the Forest Service cancelled the permit for the Chesnimnus allotment in its entirety "for allowing livestock not owned by the permittee to graze on the permitted allotment."

Fence Creek administratively appealed the Forest Service's decision, claiming that it was arbitrary and capricious and therefore in violation of the APA. The Forest Service's decision was upheld on the first-level appeal. The Deputy Forest Supervisor found "insufficient evidence to support waiver and issuance of a term grazing permit" for the Log Creek allotment based on the purchase of either base property or permitted livestock. The reviewing official found there was no evidence that the Forest Service had approved extensive cull-

ing by Fence Creek, justifying the reduction of permitted cattle on the Chesnimnus allotment. Additionally, the Deputy Forest Supervisor found "no documentation to support [Fence Creek's] claim that [it] acquired Mont[y] Siddoway or Wayne Smith livestock prior to stocking them on the Chesnimnus allotment." Finally, the reviewing officer found that there was sufficient support in the record for the complete cancellations. The Deputy Forest Supervisor also denied all of Fence Creek's challenges regarding the factfinding procedures employed by the Forest Service. Fence Creek then sought review through a second-level appeal. The Regional Forester affirmed the Forest Service's cancellation of the Log Creek and Chesnimnus allotments for reasons similar to those identified in the first-level appeal.

Because Fence Creek had exhausted its administrative remedies, it filed a complaint in the District of Oregon alleging violations of the APA and statutory and constitutional due process guarantees. Fence Creek sought to expand the administrative record by adding Forest Service files from twenty-five other grazing cases, and both parties filed motions for summary judgment. The district court refused to expand the administrative record, and then granted the Forest Service's motion for summary judgment, concluding that the Forest Service provided Fence Creek all the due process required under the APA, and that the Forest Service's decision was not arbitrary and capricious. Fence Creek timely filed a Notice of Appeal, giving us jurisdiction under 28 U.S.C. § 1291.

II

**[1]** Generally, judicial review of an agency decision is limited to the administrative record on which the agency based the challenged decision. *Lands Council v. Powell*, 395 F.3d 1019, 1029 (9th Cir. 2005). We allow expansion of the administrative record in four narrowly construed circumstances: (1) supplementation is necessary to determine if the agency has considered all factors and explained its decision;

Case 2:06-cv-01236-SU  Document 74  Filed 04/26/10  Page 11 of 19
Case: 08-36051  04/26/2010  Page: 11 of 19  ID: 7313777  DktEntry: 29-1

6128          FENCE CREEK CATTLE CO. v. USFS

(2) the agency relied on documents not in the record; (3) supplementation is needed to explain technical terms or complex subjects; or (4) plaintiffs have shown bad faith on the part of the agency. *Id.* at 1030. We review a district court's decision not to expand the administrative record for an abuse of discretion. *See Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1447 (9th Cir. 1996).

The files Fence Creek wished to include concerned twenty-five grazing permits that were not cancelled by the Forest Service despite being deficient. The district court denied Fence Creek's request because it found the administrative record was complete and that Fence Creek did not make an adequate showing of necessity or explain its failure to supplement the record before the agency. On appeal, Fence Creek argues that the proffered material would "advance the intuitive notion that the Forest Service dramatically over-reacted [sic]."

**[2]** We interpret Fence Creek's argument as an attempt to supplement the record in order to establish bad faith by the Forest Service. However, as discussed more thoroughly below, the Forest Service's decision to cancel Fence Creek's grazing permit for the Chesnimnus and Log Creek allotments was justified. Fence Creek has not shown that review of agency files of twenty-five unrelated grazing permits and actions taken concerning those permits would demonstrate that the Forest Service acted in bad faith in this specific case. Fence Creek has not met its heavy burden to show that the additional materials sought are necessary to adequately review the Forest Service's decision here. As we said in *Lands Council*, 395 F.3d at 1030, "[t]hese limited exceptions operate to identify and plug holes in the administrative record." Fence Creek has failed to show any such gaps or holes. We think the voluminous record already before us is sufficient to conduct the necessary review under the APA. We simply cannot say that the district court abused its discretion in denying Fence Creek's motion.

Case 2:06-cv-01236-SU   Document 74   Filed 04/26/10   Page 12 of 19
Case: 08-36051   04/26/2010   Page: 12 of 19   ID: 7313777   DktEntry: 29-1

FENCE CREEK CATTLE CO. v. USFS            6129

III

Fence Creek next challenges the propriety of the Forest Service's decision to cancel the Chesnimnus and Log Creek allotments. The district court granted summary judgment to the Forest Service on these issues. We conduct a de novo review of a district court's grant of summary judgment. *Anchustegui v. Dep't of Agric.*, 257 F.3d 1124, 1127 (9th Cir. 2001). Our review of the agency's decision is from the same position as the district court. *Id.* at 1128.

When reviewing agency action, the APA directs us to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). We must be careful not to substitute our judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Instead, we examine the agency's decision to ensure that it has articulated a rational relationship between its factual findings and its decision; we also must determine that its decision was based on relevant factors and does not constitute a clear error of judgment. *Id.*

Fence Creek challenges the Forest Service's decision on two grounds. First, it argues that the decision was a clear error in judgment because the Forest Service did not explicitly find that Fence Creek knowingly and willfully misrepresented any facts relating to the purchase of the Lucky Diamond Ranch and the permitted livestock. It then argues that the cancellation was arbitrary and capricious because Fence Creek adequately proved that it purchased the livestock necessary to support waiver of the grazing permit.

A

Fence Creek relies on a federal regulation, 36 C.F.R. § 222.4(a)(5), to support its argument that the Forest Service

6130        FENCE CREEK CATTLE CO. v. USFS

must make a factual finding that Fence Creek acted "knowingly and willfully" before it may exercise the authority to cancel the two allotments. The subsection upon which Fence Creek relies gives the Forest Service the authority to "[c]ancel or suspend the permit if the permittee knowingly and willfully makes a false statement or representation in the grazing application or amendments thereto." *Id.* We do not need to address whether the Forest Service adequately made a finding of knowing and willful action, however, because the Forest Service's cancellation of the grazing permit is authorized under different subsections of 36 C.F.R. § 222.4.

B

**[3]** The Forest Service may cancel a grazing permit "if the permittee does not comply with provisions and requirements in the grazing permit." 36 C.F.R. § 222.4(a)(4). This authority does not require the Forest Service to find that the permittee acted knowingly or willfully—the Forest Service need only ascertain that Fence Creek violated the terms and conditions of the grazing permit. *Id.* The grazing permit issued to Fence Creek in February 2004 explicitly prohibits the grazing of livestock other than cattle owned by the permittee on the allotments encompassed by the permit. In its December 9, 2005, letter, the Forest Service notified Fence Creek that it was cancelling the Chesnimnus allotment for such a violation: Fence Creek "allow[ed] livestock not owned by the permittee to graze on the permitted allotment." We cannot conclude that the Forest Service acted arbitrarily or capriciously in doing so.

**[4]** The Forest Service questioned Fence Creek's compliance with the terms of its grazing permit because cattle without the appropriate brand were seen on the Chesnimnus allotment and subsequently moved to another part of Oregon. That necessarily caused the agency to question who owned the cattle grazing on its land. When the Forest Service investigated, all the parties involved stated that Wayne Smith and Monty Siddoway "contributed" the cattle to Fence Creek.

FENCE CREEK CATTLE CO. v. USFS                6131

Additionally, the Forest Service discovered that some of the improperly branded cattle were also marked with a temporary Lucky Diamond brand—a hair brand. As a result, the Forest Service expressly required Fence Creek to produce supporting documentation "in the way of cancelled checks, bills of sale, or Oregon State brand inspections showing that Wayne Smith or Mont[y] Siddoway cattle were purchased by" Fence Creek. But Fence Creek never produced the requested documentation and even admitted that no such documentation existed.[5] Furthermore, the temporary hair brands on some of the cattle were not sufficient to prove ownership.

[5] Based on the lack of evidence that Fence Creek actually owned the cattle observed on the Chesnimnus allotment, we conclude that substantial evidence supports the Forest Service's factual finding of non-ownership. *See Gebhart v. SEC*, 595 F.3d 1034, 1043 (9th Cir. 2010) (reviewing an agency's factual finding to determine if it was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). This factual finding enabled the Forest Service to cancel Fence Creek's grazing permit for failing to comply with the terms of the grazing permit. *See* 36 C.F.R. § 222.4(a)(4). It also provided the requisite "rational connection between the facts found and the choice made." *See Ariz. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*, 273 F.3d 1229, 1236 (9th Cir. 2001); *id.* at 1238-39 (applying the standard of review to the issuance of an Incidental Take Statement).

C

[6] We uphold the cancellation of the grazing permit cov-

---

[5]Fence Creek submitted an undated, unsigned bill of sale for 200 cows and 10 bulls sold by Wayne Smith to Fence Creek, as well as an undated, unsigned bill of sale for 175 cows and 10 bulls sold by Monty and Shelly Siddoway to Fence Creek. These incomplete documents are not adequate to establish that the intended transaction came to fruition.

6132         FENCE CREEK CATTLE CO. v. USFS

ering the Log Creek allotment for similar reasons. The Forest Service has the ability to cancel a grazing permit "in the event the permittee . . . [r]efuses or fails to comply with eligibility or qualification requirements." 36 C.F.R. § 222.4(a)(2)(ii). Fence Creek lost its permission to graze on the Log Creek allotment because it failed to comply with the basic requirements for waiver of the former Lewis/Kudrna grazing permit. Specifically, Fence Creek did not submit evidence to the Forest Service showing that it had purchased the 247 head of cattle previously permitted to graze on the Log Creek allotment.

**[7]** Federal regulations allow the issuance of a new grazing permit "to the purchaser of a permittee's permitted livestock and/or base property, provided the permittee waives his term permit." 36 C.F.R. § 222.3(c)(1)(iv). Fence Creek submitted a waiver for the Log Creek allotment based on the purchase of the 247 head of Lewis and Kudrna cattle that were previously permitted on that allotment. But, Fence Creek was unable to prove that it had actually purchased these cattle. The only brand inspection certificate Fence Creek produced shows it bought 600 cattle marked with the Lucky Diamond brand from Garnet Lewis. The waiver for the Log Creek allotment shows the 247 head of previously permitted cattle were instead owned by Geraldine Lewis and Barbara Kudrna. There is no brand inspection certificate, bill of sale, cancelled check or receipt to prove the purported purchase actually occurred. Barbara Kudrna's affidavit, in which she avers that Fence Creek purchased the cattle, does not conclusively establish that Fence Creek complied with the requirements of obtaining its grazing permit by purchasing the previously permitted livestock. The Forest Service repeatedly informed Fence Creek that it would need to submit confirming documents such as bills of sale, brand inspection certificates, or cancelled checks to establish ownership, but Fence Creek failed to do so. Thus, the Forest Service's determination that Fence Creek did not purchase the cattle is supported by substantial evidence and provides an adequate basis for the challenged cancellation. *See Ariz. Cattle Growers Ass'n*, 273 F.3d

Case 2:06-cv-01236-SU   Document 74   Filed 04/26/10   Page 16 of 19
Case: 08-36051   04/26/2010   Page: 16 of 19   ID: 7313777   DktEntry: 29-1

FENCE CREEK CATTLE CO. v. USFS            6133

at 1238-39. The Forest Service's determination was, therefore, neither arbitrary nor capricious.

Fence Creek also asserts that it met the eligibility requirements for waiver of the Log Creek allotment because it purchased the base property. However, even if we were to assume the validity of the incomplete waiver identifying the purchase of the base property as the reason for the waiver, the record does not support the statement that Fence Creek bought the base property. A statutory warranty deed for the base property of the Log Creek allotment lists Monty and Shelly Siddoway as the purchasers. The Siddoways did not submit the waiver or apply for the grazing permit, and they were never partners in Fence Creek. Therefore, the Forest Service properly concluded that the Siddoways' purchase of the base property does not validate Fence Creek's grazing permit. *See* 36 C.F.R. § 222.3(c)(1)(iv).

Fence Creek applied for the grazing permit because it had allegedly purchased over 1,500 head of cattle. However, it could not sufficiently prove any such transaction ever took place. Consequently, the Forest Service did not act in an arbitrary or capricious manner when it cancelled Fence Creek's grazing rights for two allotments within the Wallowa-Whitman National Forest.

IV

**[8]** Fence Creek challenges the cancellation of parts of its grazing permit by arguing that the Forest Service violated the due process requirements set forth in the APA.[6] The district

---

[6]Fence Creek's complaint alleges violations of both constitutional and statutory due process. In its opening brief, however, Fence Creek challenges only the decision, or lack thereof, regarding the statutory due process protections. Because constitutional due process arguments were not addressed in the opening brief, we do not address that issue here. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[W]e will not consider any claims that were not actually argued in appellant's opening brief.").

6134         FENCE CREEK CATTLE CO. v. USFS

court granted summary judgment in favor of the Forest Service on this issue, so we review its decision de novo. *Anchustegui*, 257 F.3d at 1127. Under the APA, an agency cannot lawfully suspend or revoke a license unless the licensee has been given written notice of the facts warranting the action and an opportunity to demonstrate compliance with the requirements "before the institution of agency proceedings." 5 U.S.C. § 558(c).[7] We have previously applied these protections to grazing permits. *See Anchustegui*, 257 F.3d at 1129.

In *Anchustegui*, 257 F.3d at 1128-29, we invalidated the Forest Service's decision to cancel a grazing permit because the permittee was violating the terms of the permit. We held that the Forest Service failed to give the permittee "an opportunity to achieve compliance or to demonstrate that he had achieved compliance before the institution of agency proceedings." *Id.* at 1129. The Forest Service had not provided adequate notice under § 558 because its initial contact with the permittee was to issue a show cause letter stating that action was warranted and that the grazing permit would be cancelled unless the permittee could show why cancellation was not appropriate. *Id.* In essence, the Forest Service had instituted agency proceedings because it had already determined that the grazing permit would be cancelled without notifying the permittee that cancellation was warranted or giving the permittee an opportunity to correct or explain his violations. *Id.*

Fence Creek's protestations that similar events occurred in this case are unavailing in light of the record before us. We are not convinced that the Forest Service had already decided to cancel the Chesnimnus and Log Creek allotments before it contacted Fence Creek about its concerns. The first written communication from the Forest Service to Fence Creek was

---

[7]Section 558 does not apply "in cases of willfulness." 5 U.S.C. § 558(c). As explained *supra*, the Forest Service did not base its decision on a finding of willfulness, making the exception irrelevant to the issue before us.

Case 2:06-cv-01236-SU   Document 74   Filed 04/26/10   Page 18 of 19
Case: 08-36051    04/26/2010    Page: 18 of 19    ID: 7313777    DktEntry: 29-1

FENCE CREEK CATTLE CO. v. USFS            6135

sent over five months prior to the cancellation decision. This letter, written on June 28, 2005, was not a show cause letter. It set forth the reasons for the Forest Service's inquiry and explicitly identified what documents Fence Creek needed to provide in order to confirm ownership of the cattle and entitlement to the grazing permit. The letter did not state that Fence Creek's grazing permit would be cancelled, nor did it indicate in any other way that agency proceedings had begun.

The letter sent to Fence Creek on September 6, 2005, also was not a show cause letter. As it explicitly stated, the purpose was to provide Fence Creek "an opportunity to present full and complete understanding of the existing supporting evidence and provide additional information, as necessary." The letter responded to the documents Fence Creek had submitted and explained why those documents were inadequate to show compliance with the terms and conditions of the grazing permit.

[9] Unlike the earlier communication, this letter warned Fence Creek that its failure to meet the requirements "could result in the cancellation" of its grazing permit. Nonetheless, this second communication is still distinguishable from the letter in *Anchustegui*, 257 F.3d at 1129. The Forest Service did not tell Fence Creek in the second letter that its grazing permit *would* be cancelled unless it produced certain documents; such language would indicate that the decision had already been made. Rather, the Forest Service stated that cancellation *could* occur, illustrating that the Forest Service was merely investigating, and agency revocation proceedings had not yet been initiated.

Fence Creek further argues that they were deprived of a meaningful opportunity to comply with the terms of the grazing permit because the Forest Service did not begin its inquiry until over a year after the grazing permit was issued. However, the timing of the Forest Service's inquiry does not invalidate the decision to cancel the Chesnimnus and Log Creek

6136         FENCE CREEK CATTLE CO. v. USFS

allotments. The Forest Service issued the grazing permit because Fence Creek initially represented that it had fulfilled the eligibility requirements. The Forest Service began to question Fence Creek's representations only after it began to suspect that something was amiss, i.e., a Forest Service employee observed cattle with an unauthorized brand grazing on the Chesnimnus allotment, and then learned that those cattle were moved to a different part of Oregon. The Forest Service had no reason to investigate earlier, making earlier notification infeasible. Had Fence Creek actually fulfilled the requirements of obtaining a grazing permit, it would not have been difficult to provide responsive documents to assuage the Forest Service's concern.

[10] We are thus satisfied that the Forest Service fully complied with the due process requirements of the APA. It gave notice and fair opportunity to Fence Creek to answer its concerns. It clearly advised Fence Creek of the facts leading to the Forest Service's investigation, and it gave Fence Creek ample opportunity to show compliance with the terms of the grazing permit. As required under § 558, all of this preliminary notification and investigation was done "before the institution of agency proceedings." 5 U.S.C. § 558(c). The Forest Service gave Fence Creek almost six months to show that it owned either the permitted livestock or the base property supporting transfer of the grazing permits. It could not.

V

[11] The district court properly denied Fence Creek's motion to expand the administrative record and correctly entered summary judgment for the Forest Service. The Forest Service did not act arbitrarily or capriciously when it cancelled the Chesnimnus and Log Creek allotments, and it provided adequate due process to Fence Creek as required by the APA.

**AFFIRMED.**